# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ENRIQUE CAZAREZ, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Civil No. 10-01303-CV-W-FJG |
| ) | Crim. No. 04-0244-06-CR-W-FJG |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER

Currently pending before the Court is petitioner's Motion for Leave To Proceed In Forma Pauperis On Appeal (Doc. # 21) and Petitioner's Motion for a Certificate of Appealability (Doc. # 22).

### I. BACKGROUND

On July 16, 2004, a Complaint was issued as to Enrique Cazarez Jr. alleging that he conspired with others to distribute methamphetamine in an amount of fifty grams or more. On June 22, 2005, a Superseding Indictment was filed against Cazarez and forty other defendants. On October 25, 2005, Cazarez proceeded to trial. After two days of trial, he decided to pled straight up, without a written plea agreement. On February 23, 2006, Cazarez was sentenced to 235 months. Cazarez appealed, but the Eighth Circuit affirmed his sentence. On March 14, 2008, Cazarez filed his first § 2255 motion. On March 2, 2009, the Court held an evidentiary hearing and found that if Cazarez's counsel had objected to the drug quantity in the PSR, the Court would have been required to make a determination as to the specific quantity of drugs attributable to him. On December 22, 2009, Cazarez was resentenced to a term of 150 months. Cazarez

filed his second § 2255 motion on December 30, 2010.  In his second motion, he argued that his counsel was ineffective for failing to file a direct appeal and also for failing to challenge the criminal history computation in the PSR.  On May 4, 2012, the Court held an evidentiary hearing.  On May 30, 2012, the Court denied Cazarez's second § 2255 motion.

## II.  STANDARD

Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. See Miller-El v. Cockrell, 537 U.S. 322, 335-36, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); Garrett v. United States, 211 F.3d 1075, 1076-77 (8th Cir.2000); Carter v. Hopkins, 151 F.3d 872, 873-74 (8th Cir.1998); Cox v. Norris, 133 F.3d 565, 569 (8th Cir.1997); Tiedeman [v. Benson],122 F.3d 518, 523 [(8th Cir. 1997)].  To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. Cox, 133 F.3d at 569 (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir.1994)); see also Miller-El, 537 U.S. at 335-36 (reiterating standard). Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Miller-El, 537 U.S. at 338 (quoting Slack v. McDaniel, 529 U.S. 473, 484,120 S.Ct.1595, 146 L.Ed.2d 542 (2000)).

Masse v. United States, Nos. C08-0092-LRR,CR04-0072-LRR, 2010 WL 3724536, *3 (N.D.Iowa Sept. 16, 2010).

## III.  DISCUSSION

**A.  Motion for a Certificate of Appealability**

Petitioner has requested that the Court grant him a Certificate of Appealability. Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue under

2

paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."  As the Court stated initially in the Order denying petitioner's § 2255 Motion, the Court finds that the issues raised by movant do not meet this criteria.  In his renewed Motion for a Certificate of Appealability, petitioner argues that the Court erred in two respects: 1) in finding that Cazarez's attorney had not counseled him regarding his right to appeal or alternatively 2) by incorrectly assessing the credibility of Cazarez's attorney.

**1. Duty to Consult With Defendant About An Appeal**

With regard to the first issue, Cazarez argues that this Court summarized Mr. Kuchar's testimony as follows: "Mr. Kuchar testified that he normally advises his clients of their right to an appeal.  He stated that he might not have advised Mr. Cazarez of his right to appeal the resentencing, because the end result was so favorable."  (May 30, 2012 Order, p. 8). Cazarez argues that in light of this testimony there is a genuine probability that Mr. Kuchar at resentencing failed to meet his Sixth Amendment obligation to consult with Cazarez regarding his right to appeal.  Cazarez argues that the necessity of such a consultation should have been known to counsel in light of the fact that he was aware of Cazarez's continuing claim that the wrong drug quantity had been used to calculate his sentencing range. Cazarez argues that because counsel failed to perform his constitutionally imposed duty to consult with him regarding an appeal, a certificate of appealability should issue.

In Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Court considered the question: "Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?"  Id. at

3

477. In that case, the defendant was sentenced to 15 years to life for second-degree murder. The trial judge informed the defendant that he had a right to file an appeal within 60 days from the date he was sentenced. Defendant's public defender wrote "bring appeal papers" in her file, but no appeal was filed within the 60 day time limit. The defendant filed a federal habeas petition alleging ineffective assistance of counsel. The district court held an evidentiary hearing and found that the defendant had little to no understanding of what the appeal process was. The Court found that there was a conversation at the jail between defendant and his attorney. The defendant testified that after the sentence was pronounced, he had a conversation with his counsel and it was his understanding that she would file a notice of appeal. Counsel testified that she had no specific recollection of a conversation with defendant. The Court found that she was an experienced and meticulous attorney and had the defendant requested that she file a notice of appeal, she would have done so.

> The Supreme Court stated:
>
> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. . . . If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

Id. at 478. The Court continued:

> we have held that the Federal Constitution imposes one general

requirement: that counsel make objectively reasonable choices. . . . We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. . . . We instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Id. at 479-80. The Court noted that in making this determination, courts should consider all the information counsel knew or should have known, such as: "whether the conviction follows a trial or a guilty plea . . . whether the defendant received the sentenced bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id. at 480.

In the instant case, Cazarez testified at the evidentiary hearing regarding what happened after sentencing:

Q. After sentencing, did you have another opportunity to speak to your attorney?

A. Yes.

Q. Can you please describe where that occurred?

A. CCA. I called him on the phone.

Q. And what did you discuss, sir?

A. I asked him if I could still reappeal my criminal history, if I could reappeal. He said that I could, but he recommended against it.

Q. Okay. Now, when you say your - - the issue you wanted to discuss was your criminal history, you also wanted to discuss drugs; is that correct?

A. Yes.

Q. Okay. So you wanted to appeal those same two issues that you brought before the

5

court on the 22.55 that you had wanted to bring before the court on your initial appeal, and that you were then asking your attorney to bring before an appellate court; is that correct?

A. Yes.

. . .

Q. And just so we're perfectly clear on the issue, you personally instructed, either in person or through telephonic communication, to Mr. Kuchar that you did want to appeal the issues of your prior convictions and the drug quantity; is that correct?

A. Yes.

(Evidentiary Hearing Transcript, pp. 14 - 18).

However, Mr. Kuchar testified as to his understanding of what transpired:

Q. So Mr. Cazarez says don't object to the 188 to 235, but go ahead, Mr. Kuchar, and try and get a variance because I want something better?

A. That's exactly right.

Q. And with that information you did what your client told you to do and you negotiated more with Mr. Oliver, correct?

A. Correct.

Q. Now, you've already stated that Mr. Oliver agreed to 150 months. Did you convey that to the defendant?

A. Yes.

Q. What was his response?

A. You know, he was satisfied. He was – I don't use the word "thrilled" or anything, but he was pretty happy with it. You know, again it was only 30 months off the mandatory

6

minimum, and it's a whole lot less than before I met him he was doing 235 months.

Q. Now, when you conveyed the agreement, the 150-month agreement, was that in person, or was that over the phone?

A. It was both. In person on the 19th, over the phone, and then in person again before we came into court.

. . .

Q. Did you talk to the defendant about any possible appeal of that 150-month sentence?

A. No.

Q. Did the defendant talk to you?

A. No. That – he did not mention that he wanted to appeal 150 months. I can't tell you whether I told him he had a right to explicitly. I can tell you generally I do make those comments, you know, in terms of you have a right to appeal. In this case since it was a downward variance from a very favorable guideline, I don't know that I would have said that. But I can tell you this: If he would have told me in any way to appeal, that's something I immediately, you know, let the front desk know, and they file that one paragraph notice of appeal regardless. But that didn't happen.

Q. So to understand your testimony, in your years of practicing, it's generally something you do is advise the defendant prior to sentencing and post-sentencing of his or her right to appeal?

A. That's right.

Q. That's your normal practice?

A. That's my normal practice.

Q. You don't recall whether or not you told Mr. Cazarez he had a right to appeal?

A. I can't say whether I did or I didn't again because the sentence was a below – a downward variance, which are almost never appealed. So, I don't know – and his reaction to how happy he seemed to be – I can't answer that, Ms. Connelly. I don't remember. Honestly I don't.

. . .

Q. Well, in your opinion was there any ground that would have been – you know, would have passed the laugh test for the argument of appeal?

A. Absolutely not.

Q. Did you have any discussions with the defendant that once he got his 150 months, you would agree to file an appeal form so that he could challenge that 150 months?

A. No. I mean, if he asked – by the way, I would point out that you guys would have a greater chance of success on appeal to increase the sentence. I mean, it would be – it wouldn't make a whole lot of sense, but the bottom line here, I guess, is that he never did ask me.

. . .

Q. All right. So after the sentencing, did you have any contact, further contact with the defendant?

A. I don't remember. There may have been a phone call or two, but I can't say for sure.

Q. Well, do you recall the defendant contacting you and asking you to file a notice of appeal in this case?

A. No, ma'am.

Q. If he had asked you to file a notice of appeal, would you have done it?

A. It takes a minute. Absolutely. I would have had – I would have that filed about half

hour from when I got the phone call. At least I would have emailed up front to have it done.

(Evidentiary Hearing Transcript, pp. 35-40).

Based on the fact that Mr. Kuchar cannot definitely recall advising Cazarez that he had a right to appeal, the Court will presume that Mr. Kuchar did not "consult" with Mr. Cazarez after the sentence was imposed. In Roe, the Court rejected a bright-line rule that counsel had to always consult with a defendant regarding an appeal. Instead, the Court stated that counsel had a constitutional duty to consult when either: 1) "a rational defendant would want to appeal" or 2) "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. The factors which the Court should consider in making this determination include: "whether the conviction follows a trial or a guilty plea," "whether the defendant received the sentence bargained for" and "whether the plea expressly reserved or waived some or all appeal rights." Id. In this case, the conviction was the result of a guilty plea by the defendant after two days of trial. Cazarez also received the sentence that he bargained for. When Mr. Kuchar was initially appointed to represent Cazarez for the re-sentencing, the Government initially offered to recommend a sentence of 188 months. However, Mr. Kuchar was able to negotiate with Government counsel who eventually agreed to a sentencing recommendation of 150 months. As there was no plea agreement in place, Mr. Cazarez did not give up any of his appeal rights. Considering all of these factors, the Court finds that Mr. Kuchar did not have a constitutional duty to consult with Mr. Cazarez regarding an appeal because there were no nonfrivolous grounds for appeal and Cazarez did not reasonably demonstrate to this counsel that he wanted to appeal.

9

Accordingly, the Court does not find that there are grounds on which to grant a certificate of appealability on this issue.

### 2. Credibility

Cazarez also argues that the Court erred in denying his petition because Mr. Kuchar could not recall exactly what happened relating to the issue of an appeal. Cazarez argues that this lack of recollection concerning an appeal makes his credibility questionable. The Court disagrees. In U.S. v. B.A.D., 647 F.3d 772 (8th Cir. 2011), the Court stated:

> The presence of facial contradictions in a witness's testimony is not itself necessarily grounds for reversal. To the contrary, the resolution of such contradictions is the sole province of the trial fact-finder. . . . It is beyond doubt that the judge in this case was privileged to determine that one part of any witness's testimony was credible while another part was not. . . . Only if the credited story were so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it would an appellate court upset a trial determination of what testimony was true and what was not. . . .Witness credibility is quintessentially a judgment call and virtually unassailable on appeal.

Id. at 775-776 (internal citations and quotations omitted).

Cazarez argues that Mr. Kuchar's testimony is internally inconsistent. However, Cazarez does not point to any specific examples of inconsistency in the testimony. The simple fact that Mr. Kuchar could not remember every detail of what transpired before and after the resentencing hearing is understandable concerning the number of cases handled by Mr. Kuchar and the amount of time which was passed since the resentencing hearing. Accordingly, the Court does not find that this is a basis on which to grant a certificate of appealability.

### B. Motion for Leave to Proceed In Forma Pauperis

Federal Rule of Appellate Procedure 24(a)(3) states in part:

A party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:

(A) the district court - before or after the notice of appeal is filed - certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding; or

(B) the statute provides otherwise.

The Court has determined that petitioner's appeal is not taken in good faith, and therefore the Court hereby **DENIES** petitioner's Motion for Leave to Proceed In Forma Pauperis on Appeal (Doc. # 21).

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES** petitioner's Motion for Leave to Proceed in forma pauperis on appeal (Doc. # 21) and petitioner's Motion for a Certificate of Appealability (Doc. # 22).

Date: <u>August 30, 2012</u>　　　　　　　　　　**S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge